BULLOCK *versus* PERRY, Adm'or of THEW.

1. A *dismissal*, as the term is used in modern practice, does not amount, in effect, to a *retraxit* at common law.
2. A plea to an action of debt, averring the existence of a former action for the same cause, which had been *dismissed* by the plaintiff, held, not a good plea.
3. A dismissal and a non-suit are not equivalent to two non-suits, under the statute.
4. Under a general replication to the statute of limitations, a party may give, in evidence, a subsequent promise within the time limited.

In error from Franklin County court. Perry, Administrator of Thew, brought an action of debt against Bullock, on a due bill, for three hundred and ninety dollars, signed by said Bullock, payable to M. Gilchrist, and by him indorsed to Perry's intestate. Bullock pleaded three pleas : first, that there was a former action for the same cause, which had been dismissed by the plaintiff; second, that there had been two non-suits; and, third, the statute of limitations, of six years. To the plea of a former action and dismissal, the plaintiff demurred, and the court sustained the demurrer. Issues were taken on the other pleas, which were found for the plaintiff.

It was here assigned, in error, that the court below erred, in sustaining the demurrer to the first plea; also, in refusing to instruct the jury, that a dismissal and a non-suit, amounted, in law, to two non-suits; and, also, in permitting the plaintiff below, to give evidence of a subsequent promise, within the six years, under a general replication to the plea of the statute of limitations. These were the questions presented for determination, to this court.

*Ormond,* for plaintiff—*P. & W. B. Martin, contra.*

LIPSCOMB, C. J.—This was an action of debt, brought in the County court of Franklin county, by Perry, the defendant in error, as administrator of Abraham S. Thew, indorsee of M. Gilchrist, on a due bill, signed by the plaintiff in error, for three hundred and ninety dollars—dated 7th July, 1821, and indorsed, by Gilchrist, to Thew, 16th September, 1823.

The plaintiff in error, who was defendant in the court below, plead, first in bar, that there was a former action for the same cause, which had been dismissed, by the plaintiff below; second, that there had been two non-suits; third, the statute of limitations. To the first plea the plaintiff demurred, and took issue on the second and third. The demurrer was sustained by the court; and the jury rendered a verdict for the plaintiff, on the two issues. The first error assigned, is, that the court erred, in sustaining the demurrer. It is contended, that a dismissal amounts, in effect, to a retraxit, at common law; and is a complete bar to any future action for the same cause.

Many of the old terms, as well as forms of pleading, have been so long obsolete, that it is difficult, at this time, to determine, what was their original import and effect. And a search into the oldest black letter books of entries, would be likely to afford more gratification to the antiquary, than solid usefulness, in the administration of justice. But terms have grown into use, by long practice, and some have been introduced by legislative acts, and have now become technical, wholly unknown to those ancient books of forms. We can, however, collect this much from the obscurity of those early entries, that, retraxit, disconti-

nuance, and non-suit, had, each, its distinct and appropriate meaning.—That a retraxit was the act of the party himself, in proper person, in open court; and, that it operated as a bar to any future action, founded on the same cause. But, to a discontinuance, and a non-suit, no such consequence was attached: and, that there was no distinction, as to the number of the two last, to be taken by the plaintiff, imposed by law. Perhaps it would be difficult to assign any good reason, for the different results, produced by those entries. We can know but very little about the reason, or use of many of the old rules of pleading; and, if we are constrained to hold them, still, in reverence, it must be on the authority of Mr. Justice *Blackstone*, who most solemnly assures us, that they originated in the profoundest wisdom.

I have always thought, that it would be difficult, if not wholly impossible, for any one fully to comprehend, what was the earliest practice of the common law courts. The practice, nearly to Lord *Coke's* time, must have been fluctuating, and very far from uniform. This state of things would, consequently, result, from the want of general diffusion of learning; and, from the precarious and uncertain authority exercised by the judges: and, were we to attempt the adoption of a system of practice, such as we might suppose had prevailed, in the remotest times, in those courts, I have no doubt, we should draw much more copiously from the *regula generala*, made, from time to time, by the judges, than from that ancient and respectable source, that no one ever yet explored, the common law. I have before observed, that new terms had been engrafted on our practice, both by established precedent, and legislative enactment.—Among

these, is the term *dismiss.* It was formerly known only in the ecclesiastical courts, and in Chancery.— It is now familiar, in our courts of law; and the plaintiff in error contends, that it is a term of the same import, and attended by the same consequences, as a retraxit, at common law. But I cannot perceive why, if we must give it an ancient and respectable paternity, that we should not ascribe its origin to the more harmless, and unimportant term, *discontinuance.* We know, that in point of fact, it is often used, when discontinuance would be more appropriate, to old practice; and, that it is sometimes employed, when *non pros.* should, in strictness, be used. We are, therefore, unwilling to clothe this term with consequences, that long established practice would repudiate. Rules of practice should be made subservient to the ends of justice: this object could not be attained, were we to sustain the novel position, assumed by the plaintiff in error.

The second assignment of error, grows out of the charge of the court, on the trial of the issues. The judge was requested to charge the jury, that a dismissal, and a non-suit, amounts, in law, to two non-suits; which instruction he refused to give.

The statute of 1807,[a] provides that "two non-suits shall be considered equal to a verdict against the party suffering the same."

Much of what has been said, on the first assignment of errors, will apply to this; and, it may be added, that, as at common law, a plaintiff was not restricted in the number of non-suits, this statute is an abridgement of a common law privilege, and, as such, it cannot receive a liberal construction—we cannot embrace in its meaning, the dismissal of a suit. The

[a] Toul. Dig 455, §37.

last exception is taken to the charge of the court, in reference to the last issue.

The plaintiff was permitted, under a general replication to the plea of the statute of limitations, to give in evidence, a subsequent promise, within the six years. It was most usual, formerly, to set up the subsequent promise, by a special replication; but it is not indispensable, that it should be so replied.— Modern practice sanctions, giving such promise in evidence, under the general replication.

This practice seems to me, correct on principle.— The action is founded on the original promise, and not on the subsequent undertaking—the last only revives, and refers back to the original undertaking.— The judgment must be affirmed.