42 So.2d 39

## BROCK v. HARRIS.
### 7 Div. 967.

Court of Appeals of Alabama.
Aug. 15, 1949.

Irby A. Keener, of Centre, for appellant.

Hugh Reed, Jr., of Centre, and J. A. Johnson, of Fort Payne, for appellee.

HARWOOD, Judge.

This is an appeal from a judgment of the lower court rendered in favor of the defendant below on his plea in abatement. From such judgment the plaintiff below, appellant here perfected his appeal to this court.

The action is one on an account, and originated in the Justice Court of E. L. Bowman, Justice of the Peace, Beat 23, Cherokee County, Alabama. There the plaintiff gained a judgment, after defendant's plea in abatement had been overruled, and trial had on the merits.

The defendant in the justice court then perfected his appeal to the Law and Equity Court of Cherokee County, where he again interposed his plea in abatement.

This plea sets up that prior to the suit in Bowman's court the plaintiff had filed suits in the Justice Courts of W. J. Jackson, in DeKalb County, and in the Justice Court of A. J. Longshore, of Beat 12, Cherokee County, on the same account involved in the present cause, and had taken non-suits in each case.

The plaintiff filed an answer to the plea in abatement which contained a general denial of all averments in the plea, and issue was joined thereon.

After hearing evidence on the plea judgment was rendered in favor of defendant below, appellee here, on his plea in abatement.

Attached to and made a part of the plea in abatement filed in the court below are copies of the complaint and summons filed in the justice courts of Jackson and Longshore, above mentioned, with the following statements by each Justice of the Peace:

"Justice of the Peace Court Beat No. 6, DeKalb Co. Ala.

"W. J. Jackson . . . Justice of the Peace.

"This is to certify that the following proceedings were had and done in my Court:

"1 * * * On February 11, 1948 R. W. Brock filed suit in my Court and the case docketed as R. W. Brock vs O. L. Harris—defendant. Said cause was set down for a hearing on February 20, 1948. The defendant filed a Plea to the Jurisdiction of this court and the plaintiff taken a non-suit in my court on February 20, 1948.

"Taken and certified from my docket on this the 19th day of April 1948.

"W. J. Jackson
_____

"Justice of the Peace."

"State of Alabama
"Cherokee County.
"R. W. Brock—Plaintiff, v. O. L. Harris—Defendant.

"Justice Court Record of A. J. Longshore—Beat No. 12 said county and State of Alabama.

"My Court Docket shows as follows:

"R. W. Brock as plaintiff filed a suit against O. L. Harris in my Court on February 25th 1948 for the sum of $93.27, and case set down for trial on March 6, 1948. The defendant filed a Plea to the Jurisdiction of my Court, and on March 6, 1948, the plaintiff taken a Non-Suit in this Court. This April 19, 1948.

"I, A. J. Longshore, Justice of the Peace in and for said precinct No. 12, Cherokee County, Alabama, hereby state the above to be a true and correct record of my docket in this cause of action.

"A. J. Longshore
_____

"Justice of the Peace Beat No. 12 Cherokee County, Alabama."

In connection with the proceedings brought in Jackson's court the defendant below testified that after being served with the summons and complaint he made two

trips to see Mr. Jackson, and claimed he lived in Cherokee County, whereupon Jackson told him to go home, that he was turning the papers back to the plaintiff and nonsuiting the case as he did not have jurisdiction. The plaintiff was not present at this conversation.

As to the cause in Longshore's court the defendant below testified that after service of the summons and complaint on him he again made two trips to see Longshore. He "claimed jurisdiction," and Longshore told him he was nonsuiting the case and would mail the papers to Justice of the Peace Bowman.

For the plaintiff below Justice of the Peace Jackson testified that after papers had been served on the defendant in the suit instituted by Brock in his court the defendant came to him and claimed to be a resident of Cherokee County, which was out of his jurisdiction.

He thereupon dismissed the suit and returned the papers to Mr. Brock, the plaintiff. According to Mr. Jackson there was "never no case placed on docket, never no court cost, nothing to non suit," so he just dismissed the case.

Justice of the Peace Longshore testified in connection with the proceedings in his court that after he had issued the summons and complaint the defendant came to see him and told him he did not have jurisdiction. He thereupon mailed the papers back to the plaintiff. The original order entered by Mr. Longshore in the cause was received in evidence, and is as follows:

"The case of R. W. Brock, plaintiff **v.** O. L. Harris.

"Suit started February **25** and set for trial March the 6th.

"The defendant O. L. Harris claimed jurisdiction, so the papers were all mailed back to the plaintiff R. W. Brock on March 6th 1948.

"A. J. Longshore
"Justice of the Peace."

Mr. Brock was not present at the time of defendant's conversation with Mr. Longshore.

Section 254, Title 7, Code of Alabama 1940, provides, among other things, that "two nonsuits, not set aside or reversed on error, are equivalent to a verdict against the party suffering them."

In its judgment in favor of the defendant below the court stated:

"That the Plaintiff herein had heretofore filed two suits against the Defendant for the same cause of action in two different justices of the Peace Court and that the Plaintiff had either taken a non suit in such former actions or the same had been dismissed on either theory would bar a third prosecution between the same parties and upon the same cause of action, the court is of the opinion that the Defendant is entitled to a judgment."

At early common law "retraxit," "discontinuance," and "nonsuit," each had its distinct meaning. A retraxit was the act of the proper party himself, in open court, withdrawing his suit. It could not be done through his attorney. It acted as a bar to any future suit on the same cause.

No such consequence attached to a discontinuance or a nonsuit. Our statute as to two nonsuits being equivalent to a verdict against the party suffering them is therefore in derogation of the common law and to be strictly construed. The statute does not, by its terms, bar a suit because of prior discontinuances, regardless of the number of such discontinuances.

As to the meaning of "dismiss," Chief Justice Lipscomb, in Bullock v. Perry, 2 Stew. & P. 319, made the following pertinent observation:

"I have before observed, that new terms had been engrafted on our practice, both by established precedent, and legislative enactment.—Among these, is the term 'dismiss.' It was formerly known only in the ecclesiastical courts, and in Chancery.—It is now familiar, in our courts of law; and the plaintiff in error contends, that it is a term of the same import, and attended by the same consequences, as a retraxit, at common law. But I cannot perceive why, if we must give it an ancient and respectable paternity, that we should not ascribe its origin to the more harmless, and unimportant term, 'discontinuance.' We know, that in point of fact, it is often used, when

discontinuance would be more appropriate, to old practice; and, that it is sometimes employed, when non pros. should, in strictness, be used. We are, therefore, unwilling to clothe this term with consequences, that long established practice would repudiate. Rule of practice should be made subservient to the ends of justice: this object could not be attained, were we to sustain the novel position, assumed by the plaintiff in error.

"The second assignment of error, grows out of the charge of the court, on the trial of the issues. The judge was requested to charge the jury, that a dismissal, and a non-suit, amounts, in law, to two non-suits; which instruction he refused to give.

"The statute of 1807 (Toul. Dig. 455, Sec. 37), provides that 'two non-suits shall be considered equal to a verdict against the party suffering the same.'

"Much of what has been said, on the first assignment of errors, will apply to this; and, it may be added, that, as at common law, a plaintiff was not restricted in the number of non-suits, this statute is an abridgement of a common law privilege, and, as such, it cannot receive a liberal construction—we cannot embrace in its meaning, the dismissal of a suit."

The evidence presented below tends to show clearly that the suits in the justice courts of Jackson and Longshore were dismissed. There were no trials on the merits in either court. The plaintiff was not present in either court when, according to the testimony of the Justices of the Peace the suits were dismissed in their courts.

The original order entered by Justice of the Peace Longshore was received in evidence. It fails to show a nonsuit, but clearly shows a dismissal by rational inference.

■ The original docket record of Longshore which was received in evidence fails to show a nonsuit, and his oral testimony was that he dismissed the suit. A dismissal should be without prejudice where a court is without jurisdiction to entertain the suit. Lampert v. Ravid, 33 Misc. 115, 67 N.Y.S. 82; Waddle et al. v. Ishe, 12 Ala. 308.

■ No attempt was made in examination of either Jackson or Longshore to es-tablish the validity of the certificates purportedly signed by them and attached to the plea in abatement showing that the plaintiff had taken nonsuits in their respective courts. Certainly as to Longshore this certificate, standing by itself, is insufficient as a matter of law to overturn the original docket entry of Longshore received in evidence, which entry is contrary to Longshore's certificate attached to plea in abatement. Price v. Price, 199 Ala. 433, 74 So. 381; Bookmiller v. Jones, 216 Ala. 298, 113 So. 32; Northwestern Rug Mfg. Co. v. Russellville Furniture & Mercantile Co., 22 Ala.App. 404, 116 So. 314.

■ This being so, the court below misapplied the legal principles which should govern to the facts adduced in rendering judgment for the defendant on his plea in abatement. For this error the cause must be reversed.

■ The appellee has previously filed in this court a motion to dismiss this appeal on the grounds that it affirmatively appears from the record that appellant has failed to perfect his appeal in that the record does not contain a certificate of appeal and it fails to show the issuance of any citation of appeal, and service of such citation on the appellee.

Judgment in this cause was rendered in the court below on 17 May 1948.

A certificate of appeal in the cause, issued by the clerk of the court below, was filed in this court on June 15, 1948. Therein the clerk certifies that the appellant has filed security for cost of appeal on 17 May 1948, and designates the sureties on the appeal bond. The clerk further certifies that on 17 May 1948 notice of appeal was served on Johnson and Reed, as attorneys of record for appellee.

It is clear that the appeal was taken well within time, and as before stated, the certificate of appeal was filed in this court on 15 June 1948, less than a month after the judgment appealed from was rendered.

Supreme Court Rule 43, Civil Cases, Rules of Practice in Supreme Court, Code 1940, Tit. 7 Appendix, provides that the certificate of appeal shall not be duplicated in the transcript, but the clerk of the appellate court shall attach the certificate he

has received to the transcript when the transcript is seasonably filed in his office. This has been done in this case.

There being no evidence before us, other than the averments in the motion to dismiss, controverting the clerk's certificate as to issuance and service of citation of appeal, we will have to be governed and controlled by the statements in the certificate of appeal as to these facts. Millican v. Livingston et al., 207 Ala. 689, 93 So. 620.

Appellee's motion to dismiss this appeal is therefore without merit and is hereby denied.

For the errors above pointed out this cause must be reversed, and it is so ordered.

Reversed and remanded.

BRICKEN, P. J., not sitting.